IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| NICHOLAS COPE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Cause No.: 3:18-cv-05044 |
| vs. ) | |
| ) | |
| MISSOURI & NORTHERN ARKANSAS ) | |
| RAILROAD COMPANY, INC., ) | **TRIAL BY JURY REQUESTED** |
| ) | |
| Defendant. ) | |
| ) | |
| **Serve: The Corporation Company** ) | |
| **120 South Central Avenue** ) | |
| **Clayton, MO 63105** ) | |

## COMPLAINT

Plaintiff Nicholas Cope ("Cope" or "Plaintiff"), by and through counsel, Schlichter, Bogard & Denton LLP, states as follows for his Complaint against Defendant Missouri & Northern Arkansas Railroad Company, Inc. ("MNA" or "Defendant"):

### Parties, Jurisdiction & Venue

1. Defendant is a corporation organized and existing under the law and is authorized to, and does, operate a business by railroad in several states, including the State of Missouri, and is engaged in interstate transportation and commerce, including within this District.

2. Cope is a resident of the State of Missouri and was employed by Defendant as a freight railroad conductor, working in furtherance of Defendant's interstate transportation and commerce at all relevant times pertinent to this action.

3. This Court has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because Count I arises under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §51 et seq., and Count III arises under the Federal Railroad Safety Act ("FRSA"), 49

U.S.C. §20109(d)(3), 29 C.F.R. §1982.114(a). This Court has supplemental jurisdiction over Count II pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and 45 U.S.C. § 56 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## COUNT I – FELA

5. Plaintiff adopts and incorporates by reference paragraphs 1 through 4 above as though fully set forth herein.

6. On or about January 30, 2017, Cope was employed by Defendant and working in the normal course of his job duties near the Archer Daniels Midland ("ADM") Industry Rail Yard.

7. At approximately 11:30 p.m., after Cope and his crew delivered railcars to ADM, Cope attempted to operate a track switch to align the railroad tracks to allow Defendant's train to depart the ADM Rail Yard and return to MNA's Rail Yard in Carthage, Missouri.

8. As Cope alighted from Defendant's locomotive, Cope's foot landed on debris in the walking area of the tracks next to the locomotive, and he sustained injuries to his right ankle.

9. Cope's injuries were caused, in whole or in part, by one or more of the following acts of negligence of Defendant acting through its agents, servants, or employees, singularly or in combination:

    (a) Defendant failed to provide Plaintiff with a reasonably safe place to work or reasonably safe conditions for work;

    (b) Defendant failed to provide reasonably safe work areas including areas to allow crews to safely alight from locomotives;

    (c) Defendant failed to inspect and maintain those margins alongside its railroad tracks where its employees were required to alight from

- (d) Defendant failed to warn Plaintiff of the unsafe work areas, walking areas, and dangers on the premises on which Plaintiff was required to work;

- (e) Defendant failed to clear its work areas and walking areas of debris;

- (f) Defendant failed to provide adequate lighting;

- (g) Defendant failed to adequately address unsafe conditions that it knew or should have known were present at the location where Plaintiff was injured;

- (h) Defendant failed to use appropriately sized and secure ballast/chat in areas where it required its employees to walk;

- (i) Defendant failed to adequately respond to prior complaints made by its employees regarding the debris and poor walking conditions in the area where Plaintiff was injured;

- (j) Defendant failed to inspect and monitor work areas and walking areas where it required its employees to work and walk;

- (k) Defendant negligently assigned and instructed Plaintiff to work in areas with tripping hazards and debris in the walking area; and

- (l) Defendant negligently assigned and instructed Plaintiff to work in uneven areas littered with debris.

equipment and walk in the course of their duties reasonably free from debris and hazards known or which should have been known to exist;

10. As a result, in whole or in part, of one or more of the foregoing violations and acts or omissions of negligence on the part of Defendant, Plaintiff suffered injuries to his right ankle; he has sustained injuries to the soft tissues, ligaments, tendons, muscles, blood vessels of his right ankle; he has been caused to undergo severe pain and suffering; he has sought and received medical care and attention and will continue to receive medical care and attention; he has suffered psychological and emotional injury, mental anguish and anxiety and will continue to suffer psychological and emotional injury, mental anguish and anxiety in the future; he has incurred medical expenses and will continue to incur medical expenses; he has lost wages,

benefits and earning capacity and will continue to lose wages, benefits and earning capacity; all to his damage.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count I of his Complaint, in an amount which is fair and reasonable in excess of $75,000, plus costs of suit.

### COUNT II – VIOLATION OF MO. REV. STAT. § 389.797 (2013)
**(Strict Liability/Negligence Per Se)**

11. Plaintiff adopts and incorporates paragraphs 1 through 10 above as though fully set forth herein.

12. Plaintiff's injuries were caused, in whole or in part, by Defendant's violation of Mo. Rev. Stat. § 389.797, namely, it failed to keep and maintain those margins alongside its railroad tracks where its employees were required to walk in the course of their duties, reasonably free from debris and hazards known or which should have been known to exist, which affect the safety of such employees.

13. As a result, in whole or in part, of Defendant's violations of § 389.797, Plaintiff suffered injuries to his right ankle; he has sustained injuries to the soft tissues, ligaments, tendons, muscles, blood vessels of his right ankle; he has been caused to undergo severe pain and suffering; he has sought and received medical care and attention and will continue to receive medical care and attention; he has suffered psychological and emotional injury, mental anguish and anxiety and will continue to suffer psychological and emotional injury, mental anguish and anxiety in the future; he has incurred medical expenses and will continue to incur medical expenses; he has lost wages, benefits and earning capacity and will continue to lose wages, benefits and earning capacity; all to his damage.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count II of his Complaint, in an amount which is fair and reasonable in excess of $75,000, plus costs of suit.

## COUNT III – FRSA

14. Plaintiff adopts and incorporates by reference paragraphs 1 through 10 above as though fully set forth herein.

15. Defendant is a railroad carrier engaged in interstate commerce within the meaning of 49 U.S.C. §§20102 and 20109(a) and (b) of the FRSA.

### Employee Protections and Remedies under FRSA-49 U.S.C. §20109

16. In relevant part, 49 U.S.C. § 20109(a)(4) provides that "A railroad carrier engaged in interstate or foreign commerce, a contractor or a subcontractor of such a railroad carrier, or an officer or employee of such a railroad carrier, may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done or about to be done…to notify, or attempt to notify, the railroad carrier or the Secretary of Transportation of a work-related personal injury or work-related illness of an employee."

17. In relevant part, 49 U.S.C. §20109(b)(1)(A) states that "A railroad carrier engaged in interstate or foreign commerce, or an officer or employee of such a railroad carrier, shall not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee for…reporting, in good faith, a hazardous safety or security condition."

18. In relevant part, 49 U.S.C. §20109(c)(1) and (2) state that **"A railroad carrier or person covered under this section may not deny, delay, or interfere with the medical or first aid treatment of an employee who is injured during the course of employment… A railroad carrier or person covered under this section may not discipline, or threaten discipline to, an employee for requesting medical or first aid treatment, or for following orders or a treatment plan of a treating physician…"

5

19. Pursuant to 49 U.S.C §20109(e), an employee prevailing in any action under §20109 "shall be entitled to all relief necessary to make the employee whole," including:

    (a) reinstatement with the same seniority status that the employee would have had, but for the discrimination;

    (b) any back pay, with interest; and

    (c) compensatory damages, including compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney fees.

20. Also pursuant to 49 U.S.C. §20109(e), relief in any action under 49 U.S.C. §20109(e) may include punitive damages in an amount not to exceed $250,000.

## Facts

21. Cope accepted a job as a conductor-in-training with MNA on or about September 26, 2016.

22. On or about January 30, 2017, Cope was employed by MNA and working in the normal course of his job duties near Carthage, MO, when he sustained injuries to his right ankle as a result of unsafe working conditions.

23. Cope reported his injury to MNA management, including a written report of injury.

24. In response, MNA directed Cope not to seek out medical treatment for his injury and warned him that doing so would result in serious consequences for Cope at work.

25. Cope complied with this directive from MNA management and attempted to continue to work through the injury over the following weeks, during which time he routinely discussed the injury and his continued pain with MNA management.

26. After nearly five weeks of complying with MNA's directive not to seek medical treatment, working through pain, and seeing no improvement in the condition of his ankle, Cope

notified MNA management that he was going to seek medical treatment with an orthopedic surgeon who had previously treated Cope for an unrelated injury.

27. Rather than allowing Cope to go to his preferred doctor, MNA insisted Cope obtain medical treatment at an occupational health clinic with which, upon information and belief, MNA has a long standing relationship.

28. Cope again complied with MNA's directive and went to the occupational health clinic on March 7, 2017, as opposed to his preferred doctor.

29. The next day, March 8, 2017, Cope was summoned into work by MNA management and terminated. On March 9, 2017 he received a letter stating he was terminated.

30. Cope's protected activity in reporting his on-duty injury and seeking medical treatment was a contributing factor in Defendant's dismissal of him.

31. On June 5, 2017, pursuant to §20109 of the FRSA and the U.S. Department of Labor's implementing regulations set forth at 29 C.F.R. Part 1982, Plaintiff filed a Complaint with the Regional Administrator of Occupational Safety & Health Administration ("OSHA").

32. The Secretary of Labor had not issued a final decision within 210 days following the filing of Plaintiff's Complaint.

33. On April 20, 2018, pursuant to the FRSA, 49 U.S.C. §20109(d)(3), and 29 CFR §1982.11, Plaintiff notified OSHA of his intent to file this lawsuit in this Court.

## Violation of §20109

34. Cope engaged in protected activity under the FRSA in that he reported his work-related injuries to Defendant in good faith and sought medical treatment due to his injuries.

35. Defendant has a motive to keep personal injuries to a minimum. As a common carrier under the FELA, Defendant is subject to liability in damages for negligently injuring Plaintiff.

36. Defendant must report on-duty injuries requiring medical treatment to the Federal Railway Administration (FRA), and it faces penalties and fines for reporting these injuries. As a result, Defendant has a desire to prevent and discourage its employees from reporting injuries and seeking medical treatment.

37. Defendant's adverse action and dismissal of Plaintiff was taken in response to Plaintiff's report of injury and his necessary medical treatment due to his injuries.

38. Defendant's adverse action and dismissal of Plaintiff was done in an effort to quash Plaintiff's report of an on-duty injury and to discourage similar reports of on-duty injuries in the future.

39. Plaintiff's protected activity in reporting his on-duty injuries and seeking medical treatment were clearly the motivating factor in Defendant's dismissal of Cope.

40. Defendant's alleged reason for the dismissal is a blatant violation of 49 U.S.C. §20109(c) since Plaintiff's protected activity in seeking medical treatment and reporting his injury was clearly a contributing factor in his dismissal. Cope's decision to seek medical treatment for his reported injury, contrary to MNA's directions not to seek treatment, and his subsequent termination the day after receiving treatment establish that Cope's protected activity is inextricably intertwined with the adverse action.

41. MNA had an affirmative duty under the FRSA to help Cope receive appropriate care and "stay completely out of the way of [his] medical treatment." *Santiago v. Metro-North Commuter RR Co., Inc.*, ARB Case No. 10-147 at pp. 15-16 (July 25, 2012) (explaining that

"[a]ny obstacle placed in the way of treatment necessarily results in interference."). There is no question that MNA unlawfully inserted itself into and manipulated Cope's medical treatment, by pressuring him to avoid addressing the injury, attempting to conceal it, and eventually steering him towards the occupational medical clinic of MNA's choice.

42. The actions of Defendant in handling Cope's reported on-duty injury, interfering with his medical treatment, and terminating Cope following his medical treatment are precisely the kind of actions which the FRSA was designed to prevent. Congress recognized the history of railroads retaliating with discipline against employees who report on-duty injuries and the importance of preventing such retaliation in order to promote railroad safety.

43. The discrimination by Defendant's management and officials in response to Cope's report of personal injury and unsafe conditions engenders a culture of fear and apprehension among employees in reporting incidents of personal injury to their employer and other authorities. Specifically, employees will be deterred from reporting injuries and unsafe conditions, as well as seeking medical treatment, as a result of the culture of fear and apprehension created by its actions against employees who do report injuries.

44. Defendant would not have taken the same adverse action against Cope absent his protected activity in reporting his on-duty injury and seeking medical treatment due to his injuries.

45. Defendant should be punished for its adverse action toward Cope, for creating and perpetuating fear among employees regarding reporting injuries and safety hazards, and to deter railroad management from continuing its practice of retaliating against and disciplining its employees for reporting on-the-job injuries, unsafe working conditions, and seeking medical treatment for those injuries, all in direct and willful violation of 49 U.S.C. §20109.

9

Case 3:18-cv-05044-DPR   Document 1   Filed 06/05/18   Page 9 of 11

46. Defendant violated 49 U.S.C. §20109 in discriminating against, reprimanding, and terminating Cope due, in whole or in part, to his report of on-duty injury and unsafe working conditions, as well as seeking medical treatment due to his on-duty injuries.

47. As a result of Defendant's violation of 49 U.S.C. §20109, Cope has suffered severe damages and economic losses, including interest on those losses; he has lost wages, benefits, and earning capacity, and will continue to lose wages, benefits, and earning capacity in the future; he has suffered great pain of the mind and body and will continue to suffer great pain of mind and body permanently; he has incurred medical expenses and will continue to incur medical expenses in the future; he has suffered mental anguish and emotional distress and will continue to suffer mental anguish and emotional distress in the future; he continues to incur special damages associated with litigation, including attorney's fees, costs and expert witness fees; all to his damage.

48. Defendant's adverse action and dismissal of Cope were done with reckless, callous, and wanton disregard for the law, safety of others, and Cope's rights under the FRSA, warranting punitive damages pursuant to 49 U.S.C. §20109(e).

WHEREFORE, Plaintiff prays for a Judgment against Defendant on Count III of his Complaint and for all relief available pursuant to 49 U.S.C. §20109, including compensatory damages, special damages, punitive damages, litigation costs and attorney fees, and all other relief necessary to make Plaintiff whole.

SCHLICHTER, BOGARD & DENTON

/s/ Jerome J. Schlichter
JEROME J. SCHLICTHER Sch#32225
NELSON G. WOLFF #40796 *(pro hac vice pending)*
PATRICK E. POSTON, #69926 *(pro hac vice pending)*
100 South Fourth Street
St. Louis, Missouri 63102
(314) 621-6115
(314) 621-7151 (fax)
jschlichter@uselaws.com
nwolff@uselaws.com
pposton@uselaws.com

COUNSEL FOR PLAINTIFF